### BOISGERARD v. THE NEW YORK BANKING COMPANY.

An association organized under the act to authorize banking, contracted in the name of its president describing him as such. *Held,* the identity being clear that the contract was valid.

A variance in the use of the name of one of these associations does not vitiate its contracts. In this respect they are governed by the same rules as corporations at common law.

The bank obtained a loan of *money on a sealed agreement,* which, as it was contended, was illegal because the cashier did not sign it, according to the provision of that act. The bank had no cashier at the time. *Held,* that the lender might recover the money loaned, whether the agreement were defectively executed or not. *Semb.* that its execution was sufficient.

Such banking associations, are within the provisions of the revised statutes relative to proceedings against corporations in equity ; and on their failing to comply with the act of 1841 regulating their annual returns, they are liable to be treated as insolvent corporations under those provisions.

May 9, 1844.

THE bill was filed by Edward Boisgerard against John Dela-field, President of The New York Banking Company, and other defendants. It stated that the New York Banking Company was an association formed in November, 1838, under the provisions of the act to authorize the business of banking, passed April 13th, 1838. The bill then set forth various transactions, by means of which the complainant became a creditor of the banking company to a large amount, on which there was still due to him about $75,000. That the company was insolvent, and that in the annual return of its condition and affairs made to the Comptroller in January, 1842, it violated the directions of the statute regulating such returns.

The bill prayed for an injunction and the appointment of a receiver, and that the company might be wound up as an insolvent corporation, and its funds applied to the payment of its debts, according to the provisions of the Revised Statutes. An injunction was issued, and a receiver subsequently appointed. The bank, by its president, answered the bill, and the cause came on to be heard upon pleadings and proofs. The opinion of the court states all the additional facts which are requisite for elucidating the points decided.

*F. B. Cutting*, for the complainant.

*E. S. Van Winkle*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The validity of the complainant's debt is disputed on several grounds.

I. It is said that the sealed agreement set forth in the bill, is not made with the bank by its name of contract. The name of the institution is " The New York Banking Company," and the contract is made in the name of " John Delafield, President of the New York Banking Company."

The sixteenth section of the original act creating these associations, requires the certificate which is to be filed as a part of their organization, to specify " the name assumed to distinguish such association, *and to be used in its dealings.*" But the statute does not declare that a variance in the use of the name

thus assumed shall invalidate its contracts. Such a provision would have been as repugnant to common sense, as it is to the principles of law applicable to all corporations. (See Angell & Ames on Corp. 122, 169, 171; and the cases cited.) There is no doubt of the identity of the association described in this contract, and the misnomer therefore does not vitiate the transaction.

2. It is next objected that the contract is not signed by the cashier of the bank. This is true, and it is proved that the bank had no cashier until long after this period. There was an assistant cashier, but his execution of the instrument would have been met by a similar objection. The act before mentioned; (which in accordance with popular usage, I will hereafter call *the general banking law*,) provides that " contracts made by any such association, and all notes and bills by them issued and put in circulation as money, shall be signed by the president or vice president *and cashier* thereof." It is evident that this provision cannot receive a literal interpretation. It must be construed reasonably, and with reference to the objects in view, of which the principal one was the circulation of bank notes. There are many implied contracts which necessarily arise in the transaction of banking business, which of course could not be evidenced by the signature of any officer of the bank. So it is idle to suppose that such express contracts, as the supply of fuel, stationery, &c., for the banking house of one of these associations, were to be reduced to writing and authenticated by the president and cashier.

Probably the utmost latitude of construction would limit the provision of the law to such express contracts as were necessarily or as a matter of expediency, made in writing. I am however relieved from pursuing the inquiry, and deciding whether the omission of the signature of the cashier in this instance, rendered the agreement nugatory, by my conclusion upon the next point discussed.

I think that the complainant is entitled to recover his money, whether the agreement was or was not so executed as to be binding upon the company.

3. This brings me to the objection that the contract for the advances to the defendants was *illegal*, because the agreement

was defectively executed; and that being illegal, the complainant cannot recover back his advances.

It by no means follows that the contract is illegal, because it is invalid. A deed without a seal would be invalid, yet that would be no answer to an action to recover the consideration paid. In the instance of the insurance companies, where their charters require policies to be attested in a particular mode, if a "policy should happen to be defectively attested so as to be utterly worthless to the insured, I do not think that the requirement in the charters would be any answer to a suit to recover back the premium paid.

There is nothing in the general banking law, which requires a contract of the bank for a loan of money to be made in writing. This bank attempted to contract for a loan by a written instrument; and they received the loan. Assume that the instrument itself was totally inoperative. Is the bank therefore to keep the money? It is more reasonable to hold that the contract of loan stands precisely as it would have done if no writing had been made. The defective instrument is as no instrument. It is a nullity, which may be laid out of view; and we then have simply an advance of money, and an implied promise to repay it.

To test farther the argument that the contract is illegal because not signed by the cashier, let us suppose it to have been a contract for the sale of a lease which this bank had acquired, and that the complainant had paid the whole price. It must be conceded, that if the cashier's signature were indispensable, the complainant, could not enforce such a contract by a bill for specific performance, or by an action at law for damages. The reason is that the contract is defective; it is invalid; it does not conform to the mode by which alone the bank can legally bind itself to sell land. It is equally clear to my mind, that the complainant could thereupon recover the purchase money, in an action for money had and received  This would not be *rescinding* the contract, because that expression implies a contract which was once valid and in force. It would be recovering back money paid on a consideration which failed, and which good conscience requires should be restored to him.

The cases referred to by the defendant's counsel, were those of

agreements founded upon, or intended to effect, some design or operation prohibited by law. They came within the well defined principle that contracts founded upon an unlawful act, cannot be enforced by action. They have no application to a contract lawful in its objects, but defectively executed; or which, made for some legitimate purpose, was inoperative and null for informality.

4. It is farther objected to the complainant's debt, that the loan was made to the bank for an illegal object, viz. the cotton speculation of the bank with the Hernando Rail Road Company. The defendant's contract with the rail road company was made April 3d, 1839; the contract in question bears date June 15th, 1839. The complainant's loan was made to the defendants, and was distinct and independent from that of the defendants to the rail road company. He had no right to direct, or even to inquire, what disposition the defendants made of his money. He was to be reimbursed by the proceeds of cotton, which the rail road company were to consign to the defendants. Whether for a cotemporary loan to the rail road company or for an existing debt, the contract between these parties does not disclose. There was nothing in the agreement between the complainant and the bank, which gave notice to the former that the operation of the bank with the rail road company was unauthorized or illegal. The transaction is the same as if the complainant had advanced to the bank $50,000, and as security for its re-payment received a transfer of a bill of lading of a thousand bales of cotton shipped to the bank by some corporation in New Orleans. If the defendant's transactions with the Hernando Company were as illegal and unjustifiable as their counsel argues that they were, I must acquit the complainant of all participation in their guilt.

I have not adverted to the testimony in support of the debt. There was no question made as to its amount; nor any as to its existence, save those which I have examined. The complainant has established his claim as a creditor of the association.

His form of proceeding is the next subject of inquiry.

A receiver has been appointed on his application in this suit, by the Vice-Chancellor; and the motion was litigated by the defendants. The decision of the Vice-Chancellor, perhaps war-

rants my omission of farther investigation. I will nevertheless, briefly state my views on the point involved.

I consider it well settled that the associations created under the general banking law, are corporations. The Revised Statutes provided the form of proceeding adopted in this case, upon the application of any creditor, whenever a banking corporation should become insolvent or unable to pay its debts, or should have violated any of the provisions of its charter or of any statute binding upon it; (2 R. S. 463, 4, § 39 to 41.) In 1841, the legislature prescribed the contents of an annual return to be made by each banking association under the general law, and declared that any one of them that should fail in making such return, might be proceeded against and dissolved as *an insolvent association.* (Laws of 1841, ch. 319, § 1 to 3.)

There is but little doubt that the New York Banking Company was insolvent when this bill was filed. There is no doubt but that it had incurred the penalty of the act of 1841, by its omission to make the required return of its condition and affairs in January, 1842. It was contended in their behalf, that the words "insolvent association" in the third section of the statute of 1841, restricts the application of the penal consequences of this default, to the mode pointed out in that statute. But the act gives no mode of proceeding whatever. It does not even provide the tribunal in which it is to be instituted. It is wholly nugatory, a dead letter, except by reference to other provisions of law. I think there is no difficulty in finding the provisions which were intended to apply. As "an insolvent association," it is a corporation directly within the letter of the Revised Statutes already referred to. And I understand that this construction has been given to the act of 1841, by the Chancellor.

The objection that the complainant has a remedy at law, is not stated in the answer in a manner which authorizes the point to be raised here. If it had been fully stated, it would have been inapplicable to the principal objects of this suit.

My conclusion is that the complainant is entitled to a decree for winding up the corporation, and distributing its assets among the creditors, in the mode prescribed by the Revised Statutes.